UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DLORAH, INC.,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>KLE CONSTRUCTION, LLC,<br><br>　　　　　　Defendant. | CIV. 16-5102-JLV<br><br>ORDER |

## BACKGROUND

　　　　Plaintiff Dlorah, Inc., ("Dlorah") filed a complaint against defendant KLE Construction, LLC, ("KLE") in South Dakota state court. (Docket 1-2). KLE removed the case to this court and filed an answer to Dlorah's complaint. (Dockets 1 & 6). KLE moves the court to compel arbitration of the dispute or alternatively to stay the case pending arbitration. (Docket 7).

　　　　Dlorah's complaint revolves around an agreement it formed with KLE for KLE to perform construction services at an apartment complex in Rapid City, South Dakota. (Docket 1-2 at pp. 1-2). According to Dlorah, KLE's actions in carrying out the construction breached the agreement and constituted fraud. Id. at pp. 7-8. The complaint advances three counts: breach of contract, fraud/deceit and exemplary damages. Id.

## DISCUSSION

　　　　The court must highlight its role in relation to legal questions on submitting disputes to arbitration. The United States Supreme Court held

"there are two gateway questions of 'arbitrability' for courts to decide." Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-46 (1995)).  First, "whether the parties have a valid arbitration agreement that binds them is a question for judicial determination." Id. (citing First Options, 514 U.S. at 943-46); see ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 728 F.3d 853, 864 (8th Cir. 2013).  And second, "any question as to whether a valid arbitration agreement applies to the subject matter at hand is a question for a court to consider." EFCO, 359 F.3d at 956 (citing AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 651-52 (1986)); see Strain v. Murphy Oil USA, Inc., 6:15-CV-3246, 2016 WL 540810, at *2 (W.D. Mo. Feb. 9, 2016).

Under the Federal Arbitration Act ("FAA"), a federal court shall stay a case when it refers to arbitration the issues the case raises.  9 U.S.C. § 3.[1] "Before a district court may grant a motion to stay pending arbitration under 9 U.S.C. § 3, it 'must engage in a limited inquiry to determine whether a valid

---

[1]The statute states in full:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement.'" Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc., 516 F.3d 695, 699 (8th Cir. 2008) (citing Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 696 (8th Cir. 1994)) (internal quotation marks omitted).

**I. Whether a valid agreement to arbitrate exists**

The first issue in the court's "limited inquiry" is determining whether the parties formed a valid agreement to arbitrate. Id. Courts "apply ordinary state-law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." Asia Pacific Indust. Corp., Rainforest Cafe, Inc., 380 F.3d 383, 385 (8th Cir. 2004).

Under South Dakota law, "[a] contract is formed when all essential elements are met: (1) the parties are capable of contracting; (2) they consent to the subject of the contract; (3) the object of the contract is lawful; and (4) there was sufficient cause or consideration." Mueller v. Cedar Shore Resort, Inc., 643 N.W.2d 56, 70 (S.D. 2002) (citing SDCL § 53–1–2); see McNamara v. Yellow Transp., Inc., 570 F.3d 950, 956 (8th Cir. 2009) (applying SDCL § 53–1–2 to an arbitration agreement).

Neither party argues the arbitration agreement is not a valid contract under South Dakota law. The complaint Dlorah filed in state court asserts it "entered into a Standard Form of Agreement" with KLE for KLE to help build an apartment complex. (Docket 1-2 at p. 2). Within that contract, Section 21.1

delineates the procedure for handling disputes prior to "binding dispute resolution." (Docket 9-1 at p. 17). Section 5.1 of the contract provides, "[f]or any claim subject to, but not resolved by, mediation pursuant to Section 21.3, the method of binding dispute resolution shall be as follows: Arbitration pursuant to Section 21.4 of this Agreement." Id. at p. 4. Section 21.4 describes the procedure for carrying out the arbitration. Dlorah's filings suggest—but do not directly state—it believes the entire contract is valid. KLE affirmatively claims the contract and arbitration agreement within it are valid. (Docket 8 at pp. 2-4). Based on the filed copy of the entire contract between Dlorah and KLE, and the parties' representations in their filings, the court finds the contract, including the agreement to arbitrate, is valid under South Dakota law.

"Under the FAA, a written arbitration agreement by itself or in a contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Express Scripts, 516 F.3d at 700 (quoting 9 U.S.C. § 2). "Congress enacted the [FAA] in 1925 to 'establish[] and regulat[e] the duty to honor' . . . arbitration agreements." Id. at 699 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983)) (internal citations omitted). "[T]he FAA applies to all arbitration agreements involving transactions in . . . interstate commerce . . . ." Id. (citing 9 U.S.C. § 2).

KLE argues the FAA applies because this case involves interstate commerce in the form of companies from different states transacting for

4

construction services.  (Docket 8 at p. 4).  The court has diversity jurisdiction over the case because Dlorah is a South Dakota company, KLE is a North Dakota company, and the amount in controversy exceeds $75,000.  See Dockets 1 at p. 1 & 1-2 at p. 1.  Because the court has diversity jurisdiction and the case involves interstate commerce, the court finds the FAA applies.  See Express Scripts, 516 F.3d at 699 ("The FAA applies to the [parties'] Agreement because the prescription drug plan in dispute involved interstate commerce, and the district court's jurisdiction was based on the diversity of the parties, 28 U.S.C. § 1332.").  The FAA provides an additional basis for finding Dlorah and KLE's agreement to arbitrate "valid, irrevocable, and enforceable . . . ."  9 U.S.C. § 2.

**II.  Whether this dispute is within the arbitration agreement's scope**

"The second issue, 'whether the specific dispute falls within the scope of [the] agreement,' must also be resolved by a court to ensure that a party is not unfairly stripped of its right to a judicial decision about a matter it had not agreed to arbitrate."  Express Scripts, 516 F.3d at 700 (quoting First Options, 514 U.S. at 945).

Relevant to this point, Dlorah argues arbitration in this case is not proper because KLE deviated from the procedure in the agreement for carrying out arbitration.  (Docket 10 at pp. 2-6).  This is one of Dlorah's main arguments.  Although Dlorah does not frame it under the issue of whether a dispute falls within the scope of the arbitration agreement, that is not of consequence because the argument is unavailing under the law of the United

5

States Court of Appeals for the Eighth Circuit. Dlorah specifically argues KLE failed to refer its dispute to the engineer designated in the contract, which the contract states is a prerequisite to binding dispute resolution. The applicable section provides:

> Claims, disputes and other matters in question arising out of or relating to this Contract, including those alleging an error or omission by the Engineer but excluding those arising under Section 16.2, shall be referred initially to the Engineer for decision. Such matters, except those waived as provided for in Section 21.8 and Sections 15.5.3 and 15.5.4, shall, after initial decision by the Engineer or 30 days after submission of the matter to the Engineer, be subject to mediation as a condition precedent to binding dispute resolution.

(Docket 9-1 at p. 17). Section 21.2.1 details further procedures for the parties to "attempt in good faith to resolve any claim" through meetings. Id. at p. 18. Dlorah is correct the contract features prerequisites for the parties to satisfy before seeking arbitration. Id. at pp. 17-18. Dlorah is not correct that failure to follow that process precludes the court from submitting the dispute to arbitration.

"In contrast to these substantive arbitrability questions,[2] the [Supreme] Court has held that 'procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.'" EFCO, 359 F.3d at 956 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)). "Procedural arbitrability issues,

---

[2]Substantive arbitrability questions are the two questions around which the court structures its analysis: whether a valid agreement to arbitrate exists, and whether this dispute is within the arbitration agreement's scope. See Express Scripts, 516 F.3d at 699.

as these questions are termed, include 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Howsam, 537 U.S. at 84). "In Howsam, the [Supreme] Court noted that its decision in John Wiley & Sons,[3] stood for the proposition that arbitrators should decide whether the procedural prerequisites for arbitration had been met." Id. (citing Howsam, 537 U.S. at 85-86). In EFCO, the Eighth Circuit stated its prior case, Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 748-49 (8th Cir. 1986), held "failure to comply with pre-arbitration steps in grievance procedure was an issue of procedural arbitrability for arbitrator, not court, to decide . . . ." EFCO, 359 F.3d at 956; see also Eagle Creek Software Servs., Inc. v. Jones, Civil No. 14-4925, 2015 WL 1038534, at *6 (D. Minn. Mar. 10, 2015) (citing this holding in EFCO).

Case law from the Supreme Court and the Eighth Circuit forecloses Dlorah's argument. See EFCO, 359 F.3d at 956. On the issue of whether KLE followed the dispute resolution procedure set out in the contract, the court finds that determination must be made by an arbitrator—not a court.

The court now turns to Dlorah's causes of action to determine whether the arbitration agreement encompasses them. Courts "must liberally construe a valid arbitration clause, 'resolving doubts in favor of arbitration . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Unison Co., Ltd. v. Juhl Energy Dev., Inc., 789 F.3d 816, 818 (8th Cir. 2015) (quoting 3M

---

[3]John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964).

Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008)). "If the clause is broad, the 'liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision.'" Id. (quoting 3M Co., 542 F.3d at 1199).

"In making this determination, [the court] must decide whether the arbitration clause is broad or narrow." Id. KLE argues the court should conclude the arbitration agreement is broad. (Dockets 8 at pp. 6-8 & 12 at pp. 6-7). Dlorah does not take a precise position on whether the arbitration clause is narrow or broad. Section 21.1 of the contract between Dlorah and KLE provides that "[c]laims, disputes and other matters in question arising out of or relating to this Contract . . . shall . . . be subject to mediation as a condition precedent to binding dispute resolution." (Docket 9-1 at p. 17). Although this provision describes procedural prerequisites for the parties seeking arbitration, its opening language sets the reach of the arbitration agreement. The Eighth Circuit held a clause which provides for arbitrating any "claim arising out of or relating to th[e contract]" constitutes a broad arbitration clause. Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co., 118 F.3d 619, 620-21 (8th Cir. 1997); see Westlake Invs., L.L.C. v. MLP Mgmt. L.L.C., No. 09-CV-00095, 2010 WL 7361159, at *7 (S.D. Iowa Mar. 3, 2010) (applying Fleet Tire to find an arbitration clause with the "arising out of or relating to" language is broad). As the Eighth Circuit held when analyzing a nearly identical arbitration clause, this "provision constitutes the broadest

8

language the parties could reasonably use to subject their disputes to [arbitration.]" Fleet Tire, 118 F.3d at 621.  The court finds the arbitration agreement between Dlorah and KLE consists of broad language.  Id.

Turning to Dlorah's causes of action, the first is breach of contract. (Docket 1-2 at p. 7).  Neither party argues this claim is beyond the arbitration clause's scope.  The court finds the arbitration clause encompasses Dlorah's breach of contract claim because the cause of action arises out of and relates to the construction contract between the parties.

Dlorah's second cause of action is for fraud/deceit.  Id. at pp. 7-8. Dlorah argues this claim is not subject to the arbitration clause.  (Docket 10 at pp. 8-13).  In Dlorah's view, its fraud/deceit claim represents KLE's violation of a legal duty independent from any contractual duty.  Id. at p. 8.  Dlorah relies on cases from the United States Court of Appeals for the Eleventh Circuit for its argument that the arbitration clause does not cover its tort claim.  Id. at pp. 9-13 (discussing Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109 (11th Cir. 2001); Armada Coal Export, Inc., v. Interbulk, Ltd., 726 F.2d 1566 (11th Cir. 1984)).

KLE contends the fraud/deceit claim is subject to arbitration.  (Docket 12 at pp. 6-8).  Noting the arbitration clause's broad language, KLE asserts this cause of action must go to arbitration because the allegations involved "relate to the work done under the contract and the amount of money that must be paid in connection with that work." Id. at p. 8.

Each factual allegation of Dlorah's fraud/deceit cause of action connects to the agreement it formed with KLE and KLE's performance of the agreement. (Docket 1-2 at p. 8). Dlorah's complaint on this point reads:

> 43. KLE Construction misrepresented and/or concealed facts related to the scope of the project,[4] costs of additional work on the project, and payment of subcontractors.
>
> 44. KLE Construction misrepresented and/or concealed facts in an effort to deceive Dlorah to allow KLE Construction to continue work on the project.
>
> 45. Dlorah relied on the misrepresentation and/or concealment of facts by KLE Construction and allowed KLE Construction to continue work on the project.

Id. These allegations plainly "touch matters covered by" the arbitration clause. 3M Co., 542 F.3d at 1199. Each relates to KLE's performance of the construction contract it formed with Dlorah—whether KLE's performance was within the scope of the agreed upon project, and whether adequate payments flowed to entities performing the construction. (Docket 1-2 at p. 8). In this analysis, "[i]t generally does not matter that claims sound in tort, rather than contract." PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 837 (8th Cir. 2010).

In 3M Co., the Eighth Circuit addressed whether a case's arbitration clause encompassed fraud and tortious interference claims. See 3M Co., 542 F.3d at 1196-97. The court stated:

> Each of the nine claims in Amtex's amended complaint includes factual allegations regarding the scope of services, the costs incurred by Amtex in providing those services, its right to receive an equitable adjustment for changes to the scope of services, . . .

---

[4]"Project" refers to the construction the contract directed KLE to perform.

>or 3M's alleged withholding of payments for services. . . . [I]t cannot be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers Amtex's claims.

Id. at p. 1199.

Because Dlorah and KLE's arbitration clause employs broad language, the "liberal federal policy favoring arbitration agreements requires [the] court [to] send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Id. As the Eighth Circuit concluded in 3M Co., this court finds it lacks "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. Based on the close relationship between the fraud/deceit factual allegations and the construction contract the parties formed, the court finds Dlorah's fraud/deceit claim is within the arbitration clause's scope.[5]

### III. Permissive or mandatory

Dlorah's last argument against submitting this dispute to arbitration is that its contract with KLE permits it to seek a court remedy instead of pursuing arbitration. (Docket 10 at pp. 6-7). Dlorah focuses on Section 21.2.1 of the contract. Section 21.2.1 states the "Owner" and "Contractor"[6] must

---

[5]Neither party discusses the arbitration clause's application to the complaint's third count, exemplary damages. Because the facts underlying that claim are identical to the other counts in the respects relevant to this analysis, the court finds the claim is subject to the arbitration clause.

[6]The terms "Owner" and "Contractor" in this provision refer to individuals who have duties and responsibilities in the dispute resolution process for Dlorah and KLE.

11

make efforts to meet and resolve claims not resolved as provided in Section 21.1.[7]  The final sentence of Section 21.2.1 reads: "[i]f, within ten (10) days after such meeting the parties have not succeeded in negotiating a resolution of the Claim, then either party may pursue any and all rights and remedies available to it hereunder or at law or equity."  (Docket 9-1 at p. 18).  Because the sentence entitles either party to pursue a remedy as provided in the contract "*or at law or equity*," Dlorah believes it need not arbitrate its claims against KLE.  Id. (emphasis added).  Dlorah's view is this sentence in the contract provides the parties with a choice: pursue your claim in a court or in arbitration.

KLE argues Dlorah misreads Section 21.2.1.  KLE contends "[t]he phrase upon which Dlorah fixates merely reserves all rights and remedies, whether in law or equity, which may be pursued if negotiations fail."  (Docket 12 at p. 5). KLE takes the position Section 21.2.1 "does not speak to the method of dispute resolution.  The method for resolution is clearly arbitration in accordance with § 21.4."  Id.

Dlorah's argument functions as a request for the court to view the contract's arbitration agreement as permissive or non-mandatory.  A permissive arbitration clause allows parties to arbitrate their disputes but does not require arbitration to resolve disputes.  See Quam Const. Co., Inc. v. City of Redfield, 770 F.3d 706, 708-10 (8th Cir. 2014) (discussing a permissive

---

[7]Section 21.1 is quoted in full earlier.  See supra Section II at p. 6.

12

arbitration clause). In <u>American Italian Pasta Co. v. Austin Co.</u>, the Eighth Circuit held the following clause was mandatory and not permissive:

> In the event of any dispute or disagreement arising under this contract, it is mutually agreed, that upon written notice of either to the other party, both Owner and Austin will use their best efforts to settle such disputes or disagreement in a manner that is fair and equitable to both parties before either party can exercise the right of any legal action.
>
> If both parties agree that a dispute or disagreement is of such nature that it cannot be settled as provided for above, then such dispute or disagreement may be submitted to arbitration in accordance with the Rules of The American Arbitration Association in which event, the decision of the arbitrators shall be final and binding upon the parties.

914 F.2d 1103, 1103-04 (8th Cir. 1990) (citing Article 16 of the parties' agreement). The <u>Austin</u> court noted it must "construe a contract to give effect to all of its provisions and to avoid rendering any provisions meaningless." <u>Id.</u> at 1104 (citing <u>Johnson Controls, Inc. v. City of Cedar Rapids</u>, 713 F.2d 370, 374 (8th Cir. 1983)). Keeping that principle in mind, the court determined "[t]he phrase '[i]f both parties agree' in the second paragraph of Article 16 refers to the inability of the parties to reach a settlement rather than to the submission of the dispute to arbitration. There would be no reason for the arbitration language in Article 16 if the parties intended it to be permissive, for the parties could voluntarily have agreed to submit a dispute to arbitration in the absence of such a provision." <u>Id.</u> The court "conclude[d] that the structure and language of the contract reflect[ed] that Austin and American Pasta intended arbitration to be mandatory." <u>Id.</u>

In Quam, the Eighth Circuit considered a comparable clause and found it permissive. See 770 F.3d at 708-10. The clause read:

> Arbitration: If the dispute is not resolved through mediation, the parties may submit the controversy or claim to Arbitration. If the parties agree to arbitration, the following will apply . . . .

Id. at 708. The Quam court determined the inclusion of "[i]f the parties agree to arbitration" meant "either party [had] the option of agreeing to arbitration rather than mandating such a procedure when mediation fails, so neither party can compel arbitration." Id. at 710 (internal quotation marks omitted).

Although earlier the court discussed the dispute resolution process in Dlorah and KLE's contract, it is important in this analysis to outline the procedure step-by-step. Section 21.1 of the contract between Dlorah and KLE provides that "[c]laims, disputes and other matters in question arising out of or relating to this Contract . . . shall . . . be subject to mediation as a condition precedent to binding dispute resolution." (Docket 9-1 at p. 17). In Section 21.3, the contract states "[t]he parties shall endeavor to resolve their disputes by mediation" and then elaborates on the mediation procedure. Id. at p. 18. If mediation in Section 21.3 does not resolve a dispute, Section 5.1 directs "the method of binding dispute resolution shall be as follows: Arbitration pursuant to Section 21.4[8] of this Agreement." Id. at p. 4.

The language of Section 5.1 is clear. Under Dlorah and KLE's contract, arbitration is mandatory. In Austin the Eighth Circuit cited its prior case Bonnot v. Congress of Indep. Unions Local # 14, 331 F.2d 355 (8th Cir. 1964)

---

[8]As noted before, Section 21.4 describes the arbitration procedure. Id. at p. 18.

(Blackmun, J.), and held use of the word "may" can still render arbitration mandatory. See Austin, 914 F.2d at 1104. Then-Judge Blackmun wrote in Bonnot: "[t]he obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim." Bonnot, 331 F.2d at 359. Because Dlorah and KLE placed "shall" in their contract (Docket 9-1 at p. 4), a word even stronger than "may," the court finds Austin and Bonnot require the conclusion that this arbitration clause is mandatory.

The principle of giving meaning to each provision in the parties' contract also requires finding the arbitration agreement mandatory. Under South Dakota contract law, "[a]n interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable or of no effect." Nelson v. Schellpfeffer, 656 N.W.2d 740, 744 (S.D. 2003); see Aggregate Const. Inc. v. Aaron Swan & Assocs., Inc., 871 N.W.2d 508, 511-12 (S.D. 2015) (citing Nelson for this proposition); Quam, 770 F.3d at 709 (same). Section 21.2.1, the focus of Dlorah's argument, is a provision requiring Dlorah and KLE to "attempt in good faith to resolve any claim" not resolved by Section 21.1 through meetings. (Docket 9-1 at p. 18). To read Section 21.1.2 as Dlorah does, specifically giving its sentence about parties pursuing "any and all rights and remedies available . . . hereunder or at law or equity," would effectively erase the dispute resolution process detailed in Sections 5.1, 21.1, 21.3 and 21.4. See supra Section III at p. 14. If, despite the relationship between Sections 5.1, 21.1, 21.3 and 21.4, Dlorah or KLE could choose to seek remedies in a court, Section 5.1's provision for "the

15

method of binding dispute resolution [which] *shall* be [followed]" is meaningless. Id. at p. 4 (emphasis added). The court finds Dlorah's interpretation is not consistent with the contract principles the court must employ.

## ORDER

Based on the above analysis, it is

ORDERED that KLE's motion to stay the case pending arbitration (Docket 7) is granted. Pursuant to 9 U.S.C. § 3, the court stays this case and refers it to arbitration. The parties shall inform the court about the status of the case once arbitration is complete.

Dated July 17, 2017.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                CHIEF JUDGE